

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JUDY ANN ROBINSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-053-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Judy Ann Robinson seeks judicial review of a decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court has reviewed the administrative record, the arguments of both parties, and the applicable law and recommends that the District Court affirm the Commissioner's decision.

### I. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is statutorily limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C.

§ 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II. Statement of the Case

The Administrative Law Judge (ALJ) determined at step four of the sequential disability analysis[1] that Robinson was not disabled because she was capable of performing her past work as a receptionist despite her impairments. (Tr. 22.) Robinson sought review from the Appeals Council but was denied review. (Tr. 4-6.) The ALJ's decision is therefore the Commissioner's final decision and is properly before the court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

Robinson presents three issues: (1) whether the ALJ failed to apply the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) at step two of the sequential disability analysis; (2) whether the ALJ applied the correct legal standards at step four of the

---

[1] The Commissioner considers the applicant's claim under a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920 (2006); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential inquiry, the hearing officer decides whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.* At the fifth step of the sequential analysis, the burden is on the Commissioner to show that, considering the claimant's residual functional capacity, age, education, and past work experience, the claimant can perform work that exists in significant numbers in the national economy. At the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work available in the national economy. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted).

2

sequential disability analysis; and (3) whether the ALJ failed to apply the proper legal standards in evaluating medical opinions provided by her treating physicians.

## III. **Discussion**

### A. *The ALJ's Step Two Determination*

At step two of the Commissioner's five-step sequential analysis, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1991); 20 C.F.R. §§ 404.1520(c), 416.920(c) (2006). Under the regulations, an impairment or combination of impairments is not considered "severe" unless it significantly limits the claimant's physical and mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). If it is determined that the claimant does not have an impairment or combination of impairments that are severe, it must be determined at step two of the sequential analysis that the claimant is not disabled. *Id*. Robinson argues that the ALJ did not make a determination as to whether she had severe or non-severe physical impairments, did not cite to *Stone* or expressly state that the proper construction was given to the applicable regulation, and merely cited to *Stone* in concluding that she did not have a severe mental impairment.

The opinion in *Stone* was rendered in a case in which the claimant was found not disabled at step two of the sequential disability analysis and with the intent to prevent non-disability determinations made on grounds of non-severity without consideration of the claimant's ability to work. *See Stone*, 752 F.2d at 1100-01, 1106; *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The court directed that it would assume the

Commissioner applied an incorrect standard unless the correct standard was set forth by reference to the opinion in *Stone* or another opinion with the same effect or by an express statement indicating that the correct construction was given to the regulation governing impairment severity. *Id.* at 1106.

Opinions issued after *Stone* direct that explicit findings regarding the severity of a claimant's impairments are not required unless it is determined at step two of the sequential disability analysis that the claimant is not disabled. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (ALJ did not err in not explicitly finding a severe impairment; the ALJ made an implicit finding of severity because he went beyond the second step and reached the fifth step in the sequential evaluation process); *Chaparro v. Bowen*, 815 F.2d 1008, 1011(5th Cir. 1987) (the ALJ's failure to cite *Stone* was not reversible error because the claimant was found not disabled at step four of the sequential disability analysis rather than at step two of the analysis). Thus, in cases in which the ALJ proceeds past step two in the sequential disability analysis, the court should infer that it was determined that the claimant had a severe impairment. *See Mays*, 837 F.2d at 1364 (citing *Moon v. Bowen*, 810 F.2d 472 (5th Cir. 1987)).

In this case the ALJ determined that Robinson was not disabled at step four of the sequential disability analysis. Before concluding that Robinson was not disabled the ALJ noted Robinson's physical impairments in the second paragraph of the "Rationale and Findings" section of his decision and found in the fifth paragraph of the section that she could perform sedentary work without significant symptoms or limitations despite her

impairments. (Tr. 16, 22.) Because the ALJ proceeded past step two to step four of the sequential disability analysis, it must be concluded that he found Robinson had severe physical impairments. If he had not so found, his analysis would have ended at step two of the sequential disability analysis. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c) (in the absence of a severe impairment claimant is considered not disabled without consideration of age, education, and work experience); *see also Mays*, 837 F.2d at 1364; *Chaparro*, 815 F.2d at 1011.

There was no error in the manner in which the ALJ analyzed the severity of Robinson's mental impairments. The ALJ noted medical evidence regarding Robinson's depression, applied the appropriate regulatory standard in determining the degree of functional limitations from her depression, 20 C.F.R. §§ 404.1520a(d), 416.920a(d), and cited *Stone* in conjunction with his conclusion that she did not have a severe mental impairment. (Tr. 17.)

B.  *The ALJ's Step Four Determination*

At step four of the sequential evaluation process the ALJ must assess the claimant's residual functional capacity and determine, based on the claimant's residual functional capacity, whether he can perform his past work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In order to determine whether a claimant can perform work he has performed in the past the ALJ must assess the demands of the claimant's past work and compare them with the claimant's residual functional capacity.

*Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); 20 C.F.R. §§ 404.1560(b), 416.960(b). If, despite his impairments, the claimant is still capable of performing the demands of his past work, the ALJ must determine that he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

In this case the ALJ determined that (1) Robinson retained the functional capacity to perform work at the sedentary level; (2) based on vocational expert testimony, Robinson's past work as a receptionist was performed at the sedentary level; and (3) she was therefore not disabled. (Tr. 22.) Robinson argues that reliance on testimony from a vocational expert is not appropriate at step four of the sequential disability analysis. Citing Social Security Ruling 82-62, she argues that the ALJ is required to obtain evidence from the claimant regarding the physical and mental demands of the claimant's past work as it was actually performed. She specifically claims the ALJ in her case erred in not inquiring as to the mental demands of her receptionist job, the weight of the boxes she was required to lift when performing filing duties attendant to her job as a receptionist, or the physical demands required when she gave tours attendant to her job as a receptionist.

Social Security Ruling 82-62 requires the ALJ to obtain adequate information about the claimant's past work and the demands of such work as it bears upon the claimant's impairments. SSR 82-67, 1982 WL 31386 at *2. The Ruling is clear that the ALJ may obtain this information from either the claimant, the claimant's former employer, or another informed source. *Id* at *3. In accord with Ruling 82-62, the Fifth Circuit Court of Appeals

has held that the claimant's inability to perform certain requirements of his past job does not mean that he is unable to perform his past relevant work as that phrase is used in the regulations, *Leggett*, 67 F.3d at 564-65, and that the Commissioner may rely at step four of the sequential disability analysis on vocational expert testimony regarding the manner in which the claimant's past work is generally performed in the national economy, *see id.* at 565. The ALJ in this case did not err in relying on the vocational expert's testimony to conclude that receptionist jobs exist at the sedentary level in the national economy that Robinson can perform. *Leggett*, 67 F.3d at 564-65; SSR 82-67, 1982 WL 31386 at *3.

    C.    *The ALJ's Evaluation of Treating Physician Opinion*

Robinson brings two points of error regarding the ALJ's evaluation of records from her treating physician Donald Hubbard, M.D. She first complains that the ALJ discounted Dr. Hubbard's opinion that she was disabled. Dr. Hubbard completed a standardized form generated by the Texas Department of Human Services on which he checked a box indicating that Robinson was permanently disabled and suffered from diabetes mellitus, chronic low back pain, neuropathy, and obesity. (Tr. 280.) The ALJ declined to adopt Dr. Hubbard's opinion that Robinson was permanently disabled because he found that it was inconsistent with the remainder of the record and was unsubstantiated by objective medical findings, including Dr. Hubbard's own treatment records. (Tr. 17-18.)

The ALJ did not err. As an initial point and as the ALJ noted, the legal determination of disability is reserved exclusively to the Commissioner. 20 C.F.R. §§

404.1527(e)(1), 416.927(e)(1). Dr. Hubbard's opinion is characterized as a legal conclusion rather than a medical opinion and was therefore not entitled to controlling weight and did not require a finding that Robinson was disabled. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. §§ 404.1527(e), 416.927(e). Further, the ALJ has sole responsibility for determining a claimant's disability status, and a treating physician's opinion may be assigned little or no weight when good cause is shown. *Newton*, 209 F.3d at 455-56 (citations omitted). Good cause exists when the physician's opinion is brief and conclusory, not supported by medically acceptable techniques, or otherwise unsupported by the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). As the ALJ found, the opinion from Dr. Hubbard that Robinson was permanently disabled was inconsistent with the record and unsubstantiated by medical findings. (*See, e.g.,* Tr. 110-13, 115, 143, 151, 154, 206, 271, 289, 331, 348.) In addition, evidence from examining physician Walter Hyde, M.D., which the ALJ relied on, establishes that Johnson can perform sedentary work. (Tr. 18, 110-13.)

Robinson next complains that the ALJ ignored medical evidence and questioned the credibility of Dr. Hubbard and his decision to issue Robinson a prescription for wrist braces. (*See* Tr. 18, 340, 371.) According to the records Dr. Hubbard wrote Robinson a prescription for bilateral cocked wrist splints on March 2, 2005, six days before the hearing on March 8, 2005. (Tr. 340, 371.) Robinson indicated in testimony that she complained of numbness and tingling in her hands and that Dr. Hubbard initially believed

the problems were caused by her heart condition and high blood pressure but after testing attributed the symptoms to carpal tunnel syndrome. (Tr. 385.) At the time of the hearing the record contained only the prescription for the wrist splints, but it was agreed the record would remain open so that additional records related to the prescription could be added. (Tr. 385-86, 392.) However, there is no evidence in the records submitted after the hearing that would show Robinson was diagnosed with carpal tunnel syndrome or that she underwent testing for the same. (Tr. 341-47.) On the other hand, there is evidence that Robinson suffered from neuropathy. (Tr. 251, 255, 281.)

In his summary of the medical records the ALJ characterized the prescription for wrist splints as an "eve-of-the-hearing prescription" and noted that Dr. Hubbard prescribed the wrist splints without objective medical findings that would substantiate wrist abnormalities and without examination of Robinson's hands and further noted that there was no mention in the record of complaints related to her hands. (Tr. 18.) The ALJ referenced the "eve-of-the-hearing prescription" again in the section of his decision in which he analyzed Robinson's credibility. (Tr. 20.)

It is within the discretion of the ALJ to determine the credibility of medical records, physicians, and testimony. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). The fact that the ALJ characterized the prescription as an "eve-of-the-hearing prescription" was not error – the prescription was, in fact, issued only days before the hearing. (Tr. 340, 371.) In addition, the ALJ was correct

in noting that there are no objective medical findings in the record that would substantiate the need to prescribe wrist splints -- there is evidence that Robinson suffered from neuropathy, but there is no evidence that she was tested for carpal tunnel syndrome or that she was diagnosed with the disorder. Although the ALJ was incorrect in finding that Robinson had not complained of problems with her hands, his error does not detract from his ultimate determination. Even if it is assumed that Robinson's symptoms limit her ability to use her hands, based on testimony from the vocational expert, such a limitation would not preclude her from working in all receptionist jobs. (Tr. 391.)

In addition, the ALJ did not reject Dr. Hubbard's opinion that Robinson was disabled on grounds that he found the prescription questionable; rather, he rejected the opinion because it was inconsistent with the record and unsubstantiated by medical findings. (Tr. 17-18.) Finally, the ALJ's assessment of Robinson's credibility was not based solely on his finding the prescription questionable. (Tr. 20.) The ALJ also considered evidence including but not limited to the fact that Robinson was earning 50 dollars per week for babysitting when she applied for disability, medical records that showed symptoms related to her heart condition, diabetes, and hypertension were stable and controlled with medication, Robinson's testimony regarding her daily activities, and evidence showing that her physicians recommended exercise. (Tr. 16-21.) The ALJ's reliance on the foregoing evidence provides substantial evidence for his credibility findings as well as his ultimate conclusion that Robinson was not disabled. Because the Commissioner's decision is supported by substantial

evidence it is conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

## IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Robinson's complaint with prejudice.

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: November 30, 2006.

NANCY M. KOENIG
United States Magistrate Judge